IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | NO. 2:25-CR-047-Z (01) |
| BRANNICK RYAN DIXON (01) | |

## FACTUAL RESUME

In support of Brannick Ryan Dixon's plea of guilty to the offense in Count Three of the indictment, Dixon, the defendant, Brooks Barfield, the defendant's attorney, and the United States of America (the government) stipulate and agree to the following:

## ELEMENTS OF THE OFFENSE

To prove the offense alleged in Count Three of the indictment, charging a violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), that is, Possession with Intent to Distribute Fentanyl, the government must prove each of the following elements beyond a reasonable doubt:[1]

*First.*   That the defendant knowingly possessed a controlled substance;

*Second.*   That the substance was in fact fentanyl; and

*Third.*   That the defendant possessed the substance with the intent to distribute it.

To "possess with intent to distribute" simply means to possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction.

---

[1] Fifth Circuit Pattern Jury Instruction 2.95A (5th Cir. 2024).

**Brannick Ryan Dixon**
**Factual Resume—Page 1**

## STIPULATED FACTS

1. On or about October 29, 2024, in the Amarillo Division of the Northern District of Texas, and elsewhere, Brannick Ryan Dixon, defendant, did knowingly or intentionally possess with intent to distribute a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

2. On October 29, 2024, Amarillo Police Department (APD) officers were conducting surveillance at the new apartment complex known to be rented by Brannick Dixon, located at 2415 S. Coulter, Apt. 226, Amarillo, Texas. Officers received information that Dixon was distributing fentanyl pills behind the Outback Steakhouse restaurant, which is close to Dixon's apartment complex.

3. During surveillance, officers observed a black BMW that belonged to a known fentanyl customer of Dixon parked behind the Outback Steakhouse. Officers approached the BMW as the driver tried to leave the parking lot. The driver admitted that Dixon was on his way to deliver $100 worth of fentanyl pills to the driver.

4. Officers observed Dixon leave his apartment and cross the roadway by walking out in front of a vehicle. The vehicle had to break suddenly to prevent running over Dixon. APD officers arrested Dixon for pedestrian in the roadway. During a search incident to arrest, officers located a baggie with ten blue fentanyl pills in Dixon's possession. The pills had a gross weight of 1.77 grams.

5. Officers obtained a search warrant for Dixon's apartment. During a search of the apartment, officers located: a pink Witness, 9mm handgun, serial number

MT13590 with an empty magazine (reported stolen); a red and clear bag with $13,960 in U.S. currency in the bottom broiler of the stove; five clear baggies with blue M30 fentanyl pills with a gross weight of 50.36 grams in a jacket in the closet; and a small baggie of marijuana. Officers confirmed that Dixon was the renter and sole occupant of the apartment.

6.   Dixon was transported to the Amarillo Police Department for an interview. An officer read Dixon his *Miranda* warnings. Dixon waived his rights and agreed to make a statement. During the interview, Dixon took responsibility for all of the items found in his apartment stating, "it was my fault, it's my stuff." Dixon stated that he purchased the pink firearm off the streets for $100, and that he had it for protection. Dixon believed that he had about $15,000 in his apartment. Dixon admitted that he did not have a job and got the money from hustling. Dixon stated that he purchases fentanyl pills once a month. Dixon stated that he purchases pills for two to three dollars per pill and sells them for fifteen dollars per pill. Dixon admitted that the pills he had in his pocket during his arrest were going to the driver of the BMW. He stated that the driver was buying $100 worth of pills.

7.   The suspected fentanyl was sent to the DEA South Central Laboratory. The DEA Laboratory confirmed that the substance was, in fact, fentnayl, a Schedule II controlled substance. The substance had a total net weight of 1.056 grams.

8.   Dixon admits that he knowingly possessed with intent to distribute a controlled substance, namely fentanyl, a Schedule II controlled substance.

**Brannick Ryan Dixon**
**Factual Resume—Page 3**

9. The defendant agrees that the defendant committed all the essential elements of the offense. This factual resume is not intended to be a complete accounting of all the facts and events related to the offense charged in this case. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Count Three of the indictment.

AGREED TO AND STIPULATED on this 20th day of August, 2025.

NANCY E. LARSON
ACTING UNITED STATES ATTORNEY

_____
Brannick Ryan Dixon
Defendant

_____
Brooks Barfield
Attorney for Defendant

_____
ANNA MARIE BELL
Assistant United States Attorney
New Mexico State Bar Number 12501
500 South Taylor Street, Suite 300
Amarillo, Texas 79101-2446
Tel: 806-324-2356
Fax: 806-324-2399
Email: anna.bell@usdoj.gov

Brannick Ryan Dixon
Factual Resume—Page 4